**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **PADDY F. BARRY,** |
| **Plaintiff,** |
| **v.** |
| **TRUSTEES OF THE INTERNATIONAL ASSOCIATION FULL-TIME SALARIED OFFICERS AND EMPLOYEES OF OUTSIDE LOCAL UNIONS AND DISTRICT COUNSEL'S (IRON WORKERS) PENSION PLAN, et al.,** |
| **Defendants.** |

Civil Action No.  02-2371 (JDB)

**<u>MEMORANDUM OPINION</u>**

Presently before the court in this suit brought by plaintiff Paddy F. Barry ("Barry")

pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

1001 <u>et seq.</u>, are: (1) the motion of defendants Union Labor Life Insurance Company, Inc.

("ULLICO") and its directors Morton Bahr, James LaSala, Martin Maddaloni, William Bernard,

Marvin Bode, Kenneth Brown, John T. Joyce, and Vincent Sombrotto ("Directors") (together the

"ULLICO defendants") for summary judgment on Count VI of the Second Amended Complaint;

(2) the motion of Robert A. Georgine ("Georgine") for summary judgment on Count VI[1]; (3) the

motion of defendant Jacob West for summary judgment on all counts; and (4) plaintiff's motion

for summary judgment against all defendants.

---

[1] Georgine's motion incorporates ULLICO's motion and will be treated similarly for
purposes of this Memorandum Opinion.

## BACKGROUND

**A.      Factual Background**

The following facts are uncontroverted, unless otherwise noted.  Defendant ULLICO is a private stock company, whose Board of Directors has historically consisted primarily of officers of major unions.  See Defendant Jacob West's Statement of Material Facts as to Which He Contends There is No Genuine Issue ("West Statement") ¶ 1.  Mr. West served as a director of ULLICO from the mid-1980's until mid-2001.  Id. ¶ 2.  During that time, Mr. West purchased, with his own funds, stock in ULLICO.  Id.  ¶ 3.  The International Association of Full-Timed Salaried Officers and Employees of Outside Local Unions and District Councils Pension Plan ("the LU&DC Plan" or "the Plan") is an employee pension benefit plan within the meaning of Section (3)(2) of ERISA.  Id. ¶ 5.  Plaintiff Paddy Barry is a participant in the LU&DC Plan.  Id. Mr. West served as a trustee of the LU&DC Plan for roughly 12 years, ending in mid-2001.  Id. ¶ 6.

In 1992, while Mr. West was both a Director of ULLICO and a trustee for the LU&DC Plan, ULLICO offered the LU&DC Plan, and others, the opportunity to purchase ULLICO Preferred Certificates.  Id. ¶ 7.  In order to avoid the appearance of a conflict, Mr. West recused himself from the LU&DC Plan's discussions concerning the purchase of ULLICO's Preferred Certificates, and thus did not exercise discretion or control over the disposition of ULLICO stock held by the Plan.  Id. ¶ 8; ULLICO Defendants' Statement of Material Facts As To Which There Are No Genuine Issues ("ULLICO Statement") ¶ 15.[2]  The other two trustees of the LU&DC

---

[2]  Plaintiff argues that Mr. West's evidence is insufficient to establish that he recused himself from any involvement in the purchase of ULLICO stock.  See Plaintiff's Statement of

Plan, Leon Worley and James Cole, decided that the Plan would retain an "investment manager," Kennedy Associates, which would make all investment decisions regarding ULLICO stock for the Plan. West Statement ¶¶ 9-10.[3]  Kennedy Associates invested $2,750,000 of the LU&DC Plan's money in ULLICO's Preferred Certificates. West Statement ¶ 10. In 1995 ULLICO's Preferred Certificates were converted to stock. Id. ¶ 13.

In 1997, prior to realizing financial success on its investments, ULLICO adopted an eleven-year repurchase program, through which ULLICO each year would repurchase stock from its shareholders. Id. ¶ 15. Mr. West, as a Director of ULLICO, voted to approve the repurchase program each year from 1997 to 2001. Id. Under the repurchase program, ULLICO agreed to repurchase shares up to a maximum aggregate amount. Id. ¶ 17. If the total amount of tendered shares was more than the maximum agreed to by the directors, certain shareholders would be prorated with respect to the stock repurchases. Id. If a repurchase was oversubscribed, ULLICO would repurchase all shares of those that held less than 10,000 shares, but those with more than 10,000 would be subject to proration. Id. Mr. West resold some of his ULLICO stock through the repurchase program. Id. ¶ 18.

In February of 1997, a ULLICO subsidiary invested $7.6 million in Nautilus LLC, which

_____

Genuine Issues of Material Fact as to Jacob West ("Pl.'s Response to West Statement") ¶ 8. However, Mr. West includes the minutes from the LU&DC Plan meeting in which he excused himself during discussion of the ULLICO stock, as well as the declaration of A.H. Higgs. Taken together, Mr. West's submissions are sufficient to establish this fact, especially given the lack of contrary evidence. See ULLICO Mem., Exs. 10 & 15.

[3]  Whether Kennedy Associates constitutes a "qualified professional asset manager" ("QPAM") within the meaning of Department of Labor Prohibited Transaction Class Exemption ("PTCE") 84-14 is disputed by plaintiff. See Pl.'s Response to West Statement ¶ 6. However, the status of Kennedy Associates, and subsequently Columbia Partners, as a QPAM is irrelevant to the disposition of the parties' motions.

eventually became Global Crossing.  Pl.'s Statement of Material Facts as to Which There is No

Genuine Issue ("Pl.'s Statement") ¶ 9.  ULLICO's after tax gains on its Global Crossing

investment grew to more than $305 million through 2001.  Id. ¶ 11.  In May of 2000, the

ULLICO Board approved a $240 million repurchase of ULLICO stock, contingent on the price of

Global Crossing trading at $43 per share.  Id. ¶ 52.  When the price of Global Crossing fell, the

repurchase was abandoned by the Board.  Id.  On November 3, 2000 the Board approved a $30

million repurchase plan at a share price of $146.04, operating under similar rules as previous

repurchases, except that all shareholders owning more than 2% of ULLICO stock had to tender

all of their shares if they sought to tender any.  Id. ¶ 54.  As a result, over $880 million in

ULLICO stock was tendered for repurchase, resulting in significant proration of tender offers for

shareholders holding more than 10,000 shares.  Id. ¶ 55.  The LU&DC plan sought to tender all

of its shares of ULLICO stock, but due to the proration they were only able to sell 2,421 shares.

Id. ¶ 84.

       In addition to the November 2000 repurchase program, certain other discretionary

repurchases were made, including those as to defendants Georgine and Bernard.  Id.  ¶¶ 45, 61.

These discretionary repurchases were a longstanding practice of ULLICO.  See ULLICO

Defendants' Statement of Genuine Issues Contesting Allegations of Fact Asserted By Plaintiff

("ULLICO Resp. to Pl.'s Statement") ¶ 45.  Through the discretionary repurchases and formal

repurchase program, ULLICO repurchased a total of $44.5 million in stock.  Ultimately, a group

of twenty officers and directors accounted for 31% of the total amount repurchased by ULLICO.

Pl.'s Statement ¶ 70.  All other shareholders were only able to sell 2.2% of their ULLICO stock.

Id. ¶71.

**B.      Procedural Background**

Plaintiff Barry filed this action on December 4, 2002 (twice amending his complaint on

January 6, 2003 and August 25, 2004) seeking, <u>inter alia</u>, payment to the Plan of all Plan losses

and defendants' gains from the sale of ULLICO stock.  <u>See</u> Second Am. Compl. (Prayer for

Relief).   Defendants filed motions to dismiss plaintiff's Second Amended Complaint on a

number of grounds.  On March 11, 2004, the Court denied West's motion to dismiss, and granted

in part the motion to dismiss of the ULLICO defendants, leaving only Count VI remaining

against them.  The Court held that plaintiff's claim in Count VI against the ULLICO defendants

for knowingly participating in fiduciary breaches by West was viable.  The Court also granted the

motion to dismiss of Joseph J. Hunt, Michael A. Fitzpatrick, and Dennis R. Toney, trustees of the

Plan.  Over the course of the case, moreover, plaintiff has voluntarily dismissed his action

against: Eugene Upshaw; John Wilhelm; Douglas J. McCarron; Frank Hurt; Earl Kruse; Terrence

O'Sullivan; Lenore Miller; Moe Biller; Arthur Coia; John T. Joyce; Vincent Sombrotto; and John

Barry.  Defendant West and the remaining ULLICO defendants, as well as plaintiff, have now

filed motions for summary judgment on all remaining claims.

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  <u>See</u> <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The moving party may successfully support its

motion by "informing the district court of the basis for its motion, and identifying those portions

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

To determine whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. A moving party may succeed on summary judgment by pointing to the absence of evidence proffered by the non-moving party. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## ANALYSIS

Currently pending before the Court are motions for summary judgment from plaintiff, the ULLICO defendants, and West. The parties' memoranda address a variety of issues, but the thrust of the papers, and this action, is whether West breached his fiduciary obligations to the LU&DC Plan. Thus, it is most practical first to address West's motion for summary judgment, which directly addresses this core question.

**A.      West's Motion to Dismiss**

1.      <u>Counts I & II</u>

Counts I and II of the Second Amended Complaint allege that West breached his

fiduciary obligations to the Plan through his involvement in prohibited transactions.  <u>See</u> Second

Am. Compl. ¶¶ 28-31.  West moves for summary judgment on these counts, arguing that his

involvement in the purchase and repurchase of ULLICO stock was undertaken as a Director of

ULLICO, and thus his fiduciary responsibilities to the Plan do not attach to his actions.  West

Mem. at 7.  Plaintiff's theory on these claims is that when West approved the purchase and

repurchase of ULLICO stock for his own profit, as well as for the profit of other ULLICO

directors and executives, he was engaging in transactions with plan assets for his own benefit.

<u>See</u> Pl.'s Opp'n to West Mem. at 2.  Plaintiff also contends that West's self-dealing in ULLICO

stock breached his fiduciary duties under state law and ERISA.  <u>Id</u>. at 3-4.

Under ERISA § 406(b), 29 U.S.C. § 1106(b), a fiduciary is not permitted to transact with

plan assets for his own benefit, or to transact adversely with plan assets on behalf of a third party.

However, the ERISA statute recognizes that individuals may be both ERISA plan fiduciaries and

officers or other employees in a corporation.  <u>See</u> ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3)

(stating that "[n]othing in section 1106 of this title shall be construed to prohibit any fiduciary

from . . . serving as a fiduciary in addition to being an officer, employee, agent, or other

representative of a party in interest").  This provision recognizes that not all business decisions of

an individual who is both an employer and plan administrator will implicate that individual's

ERISA fiduciary obligations.  See Varity Corp. v. Howe, 516 U.S. 489, 498 (1996) (observing

that "obviously, not all of [plaintiff's] business activities involved plan management or administration").  Thus, the definition of fiduciary in ERISA § 3(21), 29 U.S.C. § 1002(21), acknowledges these dual roles and strikes the necessary balance by imposing ERISA fiduciary obligations only to the extent that an individual "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets."[4]

A corollary to this dual role definition is that every action of a dual-capacity employer that may affect the Plan does not necessarily implicate the individual's fiduciary obligations to the plan.  See Hickman v. Tosco Corp., 840 F.2d 564, 566-67 (8th Cir. 1988) (noting that "ERISA does not require that day-to-day corporate business transactions, which may have a collateral effect on prospective, contingent employee benefits, be performed solely in the interest of plan participants") (internal citations omitted); Berlin v. Michigan Bell Tele. Co., 858 F.2d 1154, 1163 (6th Cir.1988) (stating that "[u]nder ERISA, purely business decisions by an ERISA employer are not governed by section 1104's fiduciary standards"); see also Pegram v. Herdrich, 530 U.S. 211, 225 (2000) (observing that ERISA § 3(21) has even been read to permit situations

---

[4] In full, ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A),  imposes fiduciary obligations: with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

where a fiduciary "may have financial interests adverse to beneficiaries").

This Court must, then, determine whether the actions of West constituted management or administration of the Plan, or whether instead they were merely part of a business decision to which ERISA fiduciary obligations do not attach.  See Hunter v. Caliber System, Inc., 220 F.3d 702, 718 (6th Cir. 2000).   It is undisputed that when West approved the sale and repurchase of ULLICO stock by himself and other ULLICO officials, he did so as a Director of ULLICO.  See West Statement ¶ 15.  Moreover, plaintiff does not contest that West had fiduciary obligations to ULLICO shareholders when he allegedly approved the sale and purchase of ULLICO stock.  The inquiry, then, becomes whether West, in approving the sale and repurchase of ULLICO stock, was exercising discretionary authority or control over the management of the Plan or disposition of Plan assets.  See 29 U.S.C. § 1002(21).  Although the sale and repurchase of ULLICO stock certainly does not constitute discretionary authority over management of the LU&DC Plan itself, plaintiff contends that West's alleged self-dealing in ULLICO stock diverted "Plan assets," and this constituted an exercise of authority over the disposition of plan assets.  See Pl.'s Opp'n to West Mem. at 2.  In particular, plaintiff alleges that West "transferred $1,350,870 in funds, i.e. plan assets, which should have been distributed to the Pension Trust," and also diverted $24 million in profits that were "earmarked" for pro rata distribution to all shareholders.  Id.

But plaintiff does not provide any evidence to support his contention that ULLICO funds used to repurchase the ULLICO stock of West and other ULLICO officers were in fact "earmarked" for repurchases from other ULLICO shareholders, including the Plan.  There is also no evidence to show that "Plan assets" were used to buy and sell West's ULLICO stock.  This Court's March 11, 2004 Memorandum Opinion held that plaintiff's allegation that the LU&DC

Plan owned ULLICO stock was insufficient by itself to support a claim that ULLICO's underlying assets were Plan assets. <u>Id.</u> at 7-10.  The Court did determine that plaintiff had sufficiently pled that the ULLICO stock that West "allegedly transferred, or refused to transfer, constituted Plan assets." <u>Id.</u> at 18.   However, at the summary judgment stage the Court looks beyond the allegations in a complaint, and must consider whether there is any genuine dispute as to any material facts.  <u>See</u> Rule 56(e); <u>Anderson</u>, 477 U.S. at 248.  In this regard, there is no evidence in the record supporting plaintiff's bald assertion that ULLICO funds used to repurchase the stock of ULLICO officers were "earmarked" for the repurchase of the LU&DC Plan's ULLICO stock.  Plaintiff's own motion for summary judgment, as well as his oppositions to defendants' motions, repeat several times his contention that ULLICO profits on the Global Crossing investment were "earmarked" for distribution to the Plan, or at the very least to a pro rata distribution to all shareholders.  But each time, plaintiff fails to cite any evidence in the record to support this contention.  Without such evidence, there is no basis for the Court to find that ULLICO funds approved by West to allegedly purchase and repurchase ULLICO stock for himself were actually Plan assets.  It necessarily follows from that conclusion that West's ERISA fiduciary obligations did not apply to his involvement in ULLICO's purchase and repurchase programs because he did not exercise management or authority over either the Plan or Plan assets when he took that action.    Plaintiff therefore cannot sustain counts I and II of the Second Amended Complaint against West.

     2.     <u>Counts III & IV</u>

     Counts III and IV of the Second Amended Complaint allege that West breached his fiduciary duties to the Plan by failing to disclose to the Plan the details of the ULLICO purchase

and repurchase programs.  West contends that although claims regarding a plan's investment

decisions fall generally within the purview of fiduciary acts, he was not a fiduciary to the

LU&DC Plan for investment decisions regarding ULLICO because he had recused himself and

an investment manager had sole discretion and authority over the ULLICO investment.  See West

Mem. at 14.  West also argues that even if fiduciary duties attached, any information that West

allegedly failed to disclose was not material, and thus there was no breach of fiduciary duties.  Id.

at 17-20.

> A fiduciary's duty to disclose is set forth in ERISA § 404(a):

> a fiduciary shall discharge his duties with respect to a plan in the interest of the
> participants and beneficiaries and . . . with the care, skill, prudence and diligence
> under the circumstances then prevailing that a prudent man acting in a
> like capacity and familiar with such matters would use in the conduct of an enterprise
> of a like character and with like aims.

29 U.S.C. § 1104(a).  Congress, in passing section 404(a), incorporated within the scope of an

ERISA fiduciary's duties those fiduciary duties that exist in the common law of trusts.  See

Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 153–54 (1985) (Brennan, J.,

concurring) (stating that "[c]ongress intended in § 404(a) to incorporate the fiduciary standards

of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running

directly to beneficiaries in the administration and payment of trust benefits").  The common law

of trusts imposed a duty upon trustees to furnish information to a beneficiary.  See Bixler v.

Central Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir.1993)

(noting that "[t]his duty to inform is a constant thread in the relationship between beneficiary and

trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform

when the trustee knows that silence might be harmful").

As a threshold matter regarding plaintiff's failure to disclose claims, the Court must determine whether fiduciary obligations attach to West's actions. West contends that because Kennedy Associates, and subsequently Columbia Partners, was an investment manager with sole authority and discretion to make any investments for the LU&DC Plan with regard to ULLICO, he was not a fiduciary with respect to the Plan's investment in ULLICO. This circumstance, West contends, removed his discretionary authority or control over the Plan's ULLICO investment, and pursuant to 29 U.S.C. § 1002(21) he was no longer a fiduciary with respect to the Plan's ULLICO investment. See West Mem. at 13-15. West also points out that under ERISA sections 402(c)(3) and 405(d)(1), when an investment manager such as Kennedy Associates is appointed, "no trustee shall be liable for the acts or omissions of such investment manager." See 29 U.S.C. §§ 1102(c)(3) and 1105(d)(1).

Although fiduciary duties attach "only to the extent that [an individual] possesses or exercises the requisite discretion or control," Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 18 (1st Cir. 1998), the key is whether the individual was a fiduciary with respect to the particular activity at issue, see Maniace v. Commerce Bank of Kansas City, N.A., 40 F.3d 264, 267 (8th Cir. 1994). If Barry's claim here were focused on specific investment decisions by the LU&DC Plan regarding its ULLICO investment, then West's recusal defense would be more pertinent. However, plaintiff's claim of non-disclosure implicates a fiduciary duty of West that is not directly tied to a particular investment. The mere fact that the alleged information pertains to a particular investment of the Plan as to which West is recused and has given over discretionary authority does not by itself erase West's fiduciary duty to provide to the Plan all material

information in his possession that may have an impact on the Plan.  See Eddy v. Colonial Life Ins. Co., 919 F.2d 747, 750 (D.C. Cir. 1990) (stating that "[t]he duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA").

West's defense that ERISA sections 402(c)(3) and 405(d)(1) provide him a safe harbor from liability is also unavailing.  Section 405(d)(1) shields a trustee from liability for acts of an investment manager.  See 29 U.S.C. §1105(d)(1) (stating that "no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager").  This provision protects West from breaches by the investment manager and removes his responsibilities to manage the Plan's ULLICO investment, but it does not create a safe harbor for West against a claim based on his failure to disclose material information to the Plan. Nothing in section 405(d)(1) excuses a trustee from his "core" fiduciary obligation to disclose material information, even if the material information pertains to an investment covered by section 405(d)(1).

To establish a claim for a failure to disclose, plaintiff must show that West possessed material information, not known by the investment managers who were responsible for the LU&DC Plan's investments regarding ULLICO, and failed to disclose that information to the investment managers.  See Eddy, 919 F.2d at 750.  A key element of this claim is that the alleged non-disclosure must be material.  See Glasziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc., 93 F.3d 1171, 1182 (3d Cir. 1996) (stating that "a fiduciary has a legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but

unknown to the beneficiary, which the beneficiary must know for its own protection").  Plaintiff alleges that West failed to communicate to the Plan, and its investment managers, material information about the discretionary repurchase plan; the personal benefits that he and other ULLICO officials earned from the increase in the ULLICO share price; the fact that "profits that were earmarked as dividend or redemption distributions for all shareholders would be paid disproportionately to officers and directors"; and the details and impact of the 2000 formal repurchase program.  See Pl.'s Mem. at 28.  Plaintiff also alleges that West personally lied to him when West told him in 2000 that the Plan's ULLICO stock could not be sold "absent a formal repurchase offer from the company."  Id.

The evidence on this claim simply does not bear out plaintiff's allegations.  In particular, the Vice Chairman of Columbia Partners, the investment manager for the Plan's investment in ULLICO, has declared that Columbia Partners was fully aware of the proration aspect of the repurchase program.  See ULLICO Mem., Ex. 11, Declaration of Terence W. Collins ("Collins Decl.") ¶ 13.  This evidence directly rebuts plaintiff's unsubstantiated allegation that the Plan was unaware of the effect of the prorated repurchase program.  Moreover, Columbia Partners determined that it possessed all material information needed to make a prudent decision regarding the 2000 and 2001 ULLICO repurchase programs.  Id. ¶¶ 14-15.

Plaintiff's response on this point is limited.  He again argues that ULLICO profits were "earmarked" for the repurchase program, without any evidence to support this allegation.  See Pl.'s Opp'n to West Mem. at 4.  Plaintiff also refers to the "congressional hearing, press, and lawsuits" as evidence of the materiality of the information.  Id. at 5.  But plaintiff has no response to the sworn declaration of Mr. Collins beyond stating that he doubts Columbia Partners knew of

the ULLICO officials' compensation.  See Pl.'s Response to West Statement ¶ 29.  Thus, the

Court is faced with, on the one hand, a declaration from the investment managers that they

possessed all material information to make prudent investment decisions, and on the other hand,

plaintiff's unsubstantiated allegations.  In such a situation, plaintiff cannot survive summary

judgment without providing some evidence to support his allegation that West withheld material

information from the Plan.

Plaintiff tries to salvage his claims by alleging that West lied to him at an Advisory

Committee meeting in September 2000 by stating that ULLICO stock could not be sold outside

of the formal repurchase program.  See Pl.'s Mem. at 28-29.  However, this allegation is

insufficient to support a claim that West breached his fiduciary obligation to disclose all material

information.  The alleged statement was made to plaintiff in the context of the Advisory

Committee, which plaintiff acknowledges had neither authority over the Plan nor any ability to

affect the Plan's ULLICO investment.  See ULLICO Mem., Ex. 4 Deposition of Paddy Barry

("Barry Dep.") at 24, 27, 30, 60.  Hence, plaintiff has not established how this alleged lie had any

impact on the Plan's investment in ULLICO stock.  Nor has plaintiff shown how information

regarding the discretionary repurchase conducted by ULLICO officers would have impacted

investment decisions by the Plan, because even if West did lie about the existence of the

discretionary repurchase program, Columbia Partners would still have sought to sell its ULLICO

shares at the all-time high price of $146 per share.  See Collins Decl. ¶¶ 8,15.  Finally, the bare

allegations contained in plaintiff's deposition remain the only evidence that any such meeting

occurred -- there is no record of this alleged Advisory Committee meeting in the Plan's minutes,

nor any other testimony supporting its existence.

Plaintiff has failed to establish that West withheld material information from the Plan. But even if plaintiff had established that West did so, he cannot show that the alleged non-disclosure caused any damages to the Plan. Under ERISA § 409, a fiduciary is liable only for "any losses to the plan" resulting from his breach. See 29 U.S.C. § 1109(a); see also Silverman v. Mutual Benefit Life Ins. Co., 138 F.3d 98, 104 (2nd Cir.), cert. denied 526 U.S. 876 (1988) (stating that plaintiff must show fiduciary's breach caused the plan's losses). Plaintiff alleges that had the Plan known of the repurchases of ULLICO executives' shares, the Plan would have also engaged in that repurchase program and the ULLICO board of directors would never have authorized the discretionary repurchase program. See Pl.'s Opp'n to West Mem. at 6. According to plaintiff, the Plan would then have received $16 million in the 2000 repurchase program rather than $353,581. Id.

But there is no evidence to support plaintiff's allegations; in particular, there is no evidence that any revelations of information allegedly not known to Columbia Partners would have caused them to take a different course of action. See Collins Decl. ¶¶ 14-15. Under any scenario, the LU&DC Plan would have sought to sell as much of its ULLICO stock as possible for the $146 per share price, and thus no amount of information from West would have made the Plan take a different course. Plaintiff's allegation that, had this information been known, the Plan would have sold more of its shares of ULLICO is thus too speculative to support a claim of damages. There is simply no evidence that a larger repurchase program was contemplated. Plaintiff's claim is really an attempt to capture the alleged damages that would accrue to ULLICO as a result of an alleged breach of corporate fiduciary duties by West and other ULLICO officials. However, plaintiff cannot bring that action, and he is limited to pursuing only those damages to

the Plan resulting from West's ERISA fiduciary breaches.  On that claim, plaintiff has not
established that the Plan suffered any damages.

      3.     <u>Counts V & VI</u>

In Counts V and VI of the Second Amended Complaint, plaintiff alleges that West
permitted the Plan to engage in prohibited transactions and that he breached his duties by
allowing others to breach their fiduciary duties to the Plan.  Neither count can support a claim
against West.  Plaintiff has not specified the alleged prohibited transactions in which the Plan
engaged.  This Court's March 11, 2004 Memorandum Opinion identified West as the only
possible fiduciary to the Plan, and thus there are no other fiduciaries to whom West could have
provided aid in a breach of their duties.  Therefore, West is entitled to summary judgment on the
claims in Counts V and VI as well.  [5]

**B.    ULLICO Defendants' Motion**

The only claim against the ULLICO defendants that survived the earlier motion to
dismiss is Count VI, which alleges that ULLICO knowingly participated in West's fiduciary
breach.  <u>See</u> Mem. Op. at 15-16.  But that claim cannot survive summary judgment in light of the
Court's conclusion that plaintiff failed to establish that West breached any fiduciary duty to the
LU&DC Plan.  Without a breach of fiduciary duties by West, the ULLICO defendants could not
have knowingly participated in a breach.  Thus, the ULLICO defendants are entitled to judgment
in their favor on Count VI.

---

    [5] All other counts in plaintiff's Second Amended Complaint were either dismissed or are
simply statements of relief sought rather than causes of action.

Even assuming that West had breached his fiduciary duties to the Plan, plaintiff has failed to provide any evidence that the ULLICO defendants knowingly participated in such a breach. Plaintiff testified at his deposition that he had no knowledge as to whether any ULLICO defendants were even aware that West was a trustee of the LU&DC Plan. See Barry Dep. at 115-119. Plaintiff contends that because most directors of ULLICO are current or former union presidents and union presidents are usually trustees of union pension plans, the ULLICO defendants had constructive knowledge that West was a trustee of the LU&DC Plan. See Pl.'s Opp'n to ULLICO Mem. at 13. Not only is plaintiff's syllogism unsupported by evidence, but it also incorrectly states the relevant legal standard. To prevail on this claim, plaintiff must establish that the ULLICO defendants had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." Harris Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 251 (2000). This requirement that the non-fiduciary must be aware of the "circumstances that rendered the transaction unlawful" ensures that ERISA's exacting obligations will not easily be imputed to a non-fiduciary. Id. at 252. Mere knowledge by the ULLICO defendants that West was a fiduciary to the Plan is simply not enough to establish liability of the ULLICO defendants under ERISA § 502(a)(3).

Here, in any event, plaintiff has even failed to provide evidence that shows the ULLICO defendants were aware of West's status as fiduciary to the Plan. Notwithstanding plaintiff's characterization, the testimony of defendant Marvin Boede does not establish that he knew West was a trustee of the Plan. See ULLICO Mem., Ex. 8 (Deposition of Marvin Boede). Plaintiff's general assertion that it was common knowledge that union presidents are trustees of union pension plans is also unsupported by any evidence. In short, plaintiff cannot even offer evidence

-18-

to support the incorrect legal standard that he urges for this claim against the ULLICO defendants

under Count VI.

## CONCLUSION

Plaintiff's action has more to do with corporate misconduct at ULLICO than with West's

alleged  breach of his fiduciary duties to the Plan.  The thrust of plaintiff's evidence in support of

his claims is a November 26, 2002 Report of Special Counsel to the ULLICO Board of Directors,

which addresses alleged misconduct by ULLICO officials.  However, claims of corporate

malfeasance are not before the Court, nor could plaintiff pursue such claims here.  Rather,

plaintiff's only viable action against defendants is for breach of fiduciary duties to the LU&DC

Plan.  For the reasons stated above, plaintiff has failed to establish such claims, and therefore

defendants' motions for summary judgment are granted, and plaintiff's motion for summary

judgment is denied.  A separate order has been issued on this date.

   /s/    John D. Bates    

JOHN D. BATES

United States District Judge

Dated:   September 20, 2005

Copies to:

Richard L. Cys
1500 K Street, NW
Suite 450
Washington, DC 20005-1272
(202) 508-6617
Fax: (202) 508-6699
Email: rickcys@dwt.com
Richard J. Birmingham
BIRMINGHAM, THORSON & BARNETT, PC
3315 Two Union Square

601 Union Street
Settle, WA 98101
(202) 467-1240
          *Counsel for plaintiff*

Joseph Semo
JOSEPH SEMO, LLC
3 Metro Center
Suite 700
Bethesda, MD 20814
(301) 253-3666
Fax: (202) 955-8311
Email: jsemo@federlaw.com

Katherine S. Kamen
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue
Suite 1200
Washington, DC 20006-5811
(202) 857-0620
Fax: (202) 659-4503
Email: ksk@groom.com

James E. Sharp
SHARP & GROVE
Suite 475
2020 K Street, N.W.
Washington, DC 20006
(202) 467-4114
Fax: (202)467-1625
Email: jimsharp@sharpgrove.com

Jeffrey E. Hartnett
BARTLEY, GOFFSTEIN, BOLLATO AND LANGE, LLC
4399 Laclede Avenue
St. Louis, MO 63108
(314) 531-1054
Fax: (314)531-1131

William Flint Boyer
SHARP & ASSOCIATES
2020 K Street, NW
Suite 475
Washington, DC 20006
(202) 467-4114
Fax: (202) 467-1625
Email: williamboyer@sharpgrove.com

Jeffrey R. Freund
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, NW
Suite 1000

Washington, DC 20005-2207
(202) 842-2600
Fax: (202) 842-1888
Email: jfreund@bredhoff.com

John J. Cassidy
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
(202) 293-6400
Fax: (202) 585-1084
Email: john.cassidy@bakerbotts.com
Stephen L. Braga
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700
Fax: (202) 639-7890
Email: stephen.braga@bakerbotts.com
S Robert Sutton
JANIS, SCHUELKE & WECHSLER
1728 Massachusetts Avenue, NW
Washington, DC 20036
(202) 861-0600
Fax: 202-223-7230
Email: srsutton@janisschuelke.com
Robert William Alexander
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, NW
Tenth Floor
Washington, DC 20005-2207
(202) 842-2600
Fax: (202) 842-1888
Email: ralexander@bredhoff.com

Robert M. Weinberg
BREDHOFF & KAISER, P.L.L.C.
805 15th Street, NW
Suite 1000
Washington, DC 20005
(202) 842-2600

Joseph A Yablonski
YABLONSKI BOTH & EDELMAN
1140 Connecticut Avenue, NW
Suite 800
Washington, DC 20036
(202) 833-9060
Fax: (202) 463-6688

Email: chipyablonski@ybelaw.com

Larry S. Gondelman
POWERS, PYLES, SUTTER & VERVILLE, PC
1875 Eye Street, NW
12th Floor
Washington, DC 20006-5409
(202) 466-6550
Fax: (202) 349-4253
Email: larry.gondelman@ppsv.com
Randall J. Turk
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
(202) 639-7733
Fax: (202) 639-7890
Email: rjt@bakerbotts.com
        *Counsel for defendants*